## BROWN v. GRAY & WILMERDING.
### (No. 8524.)

(Court of Civil Appeals of Texas. Galveston.
Nov. 6, 1923. Rehearing Denied
Dec. 6, 1923.)

**1. Fraud ⊚⊐22(I)—Actionable fraud in sale of stock shown.**

Facts taken as confessed, under Rev. St. art. 3685, by refusal to answer ex parte interrogations as to defendant's knowledge, when he offered stock for sale by plaintiffs, that there was another issue by another company of the same name as that issuing the stock offered, that the latter was not the stock quoted on the exchange at the amount represented, that his purpose was to lead plaintiffs to believe that it was, and that he realized having misled them into so believing, *held* sufficient to show actionable fraud, though letters and telegrams evidencing the contract might merely indicate mutual mistake and plaintiffs might have learned the truth by further inquiry.

**2. Venue ⊚⊐8—Fraud in offering stock for sale by brokers held committed in county wherein letter offering it was received.**

Fraud in offering stock for sale by brokers *held* to have been committed in the county, wherein the letter offering it was received and acted on.

**3. Venue ⊚⊐7—Letters and telegrams held not evidence of contract to perform obligation in county wherein received.**

Letters and telegrams relative to the listing and sale of stock by brokers held not evidence of a written contract to perform an obligation in the county wherein received.

**4. Appeal and error ⊚⊐544(I)—Assignments on overruling of objections or motions to exclude testimony held unavailable.**

Assignments of error in overruling objections to or motions to exclude testimony cannot be sustained, in the absence of a showing that any bill of exceptions was taken to the court's action in permitting the witness to answer.

**5. Evidence ⊚⊐318(I)—Testimony that stock offered for listing was not quoted on stock exchange as represented held not hearsay.**

Testimony of a stock broker that stock received by him for listing as manager of a brokerage firm's branch office was not being quoted on the New York Stock Exchange at a stated price as represented by the sender, but that there was another issue by a company of the same name as that issuing the stock which was so quoted, according to various publications, *held* not hearsay.

**6. Appeal and error** ☞1051(3)—**Admission of hearsay testimony held harmless, in view of appellant's admissions.**

Admission of testimony objected to as hearsay *held* harmless, in view of appellant's admission to the same general effect by refusal to answer questions asked on the taking of his deposition.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by Gray & Wilmerding against W. T. Brown. From an order overruling defendant's plea of privilege, he appeals. Affirmed.

Homer O. Jennings, of Marlin, and W. T. Jackson, of Groesbeck, for appellant.

Baker, Botts, Parker & Garwood, of Houston, for appellee.

GRAVES, J. This appeal is from an order of the district court of Harris county, the Eightieth district of Texas, overruling defendant W. T. Brown's plea of privilege to be sued in the district court of Limestone county, the county of his residence.

Plaintiffs in the trial court, Gray & Wilmerding, a copartnership firm with principal place of business in New York City, but with branch office in Houston, Tex., sued defendant, W. T. Brown, a resident of Limestone county, for the sum of $7,000, $6,333.60 of it as money obtained from them for 700 shares of the stock of Wilcox Oil & Gas Company, of Limestone county, Tex., and $633.40 as damages alleged to be due plaintiffs upon defendant's failure to deliver the kind of stock alleged to have been contracted by him to be delivered to them, that is, stock of Wilcox Oil & Gas Company, of Tulsa, Okl. The contract between the parties was evidenced solely by correspondence, both letters and telegrams, those to Gray & Wilmerding being received at Houston, Tex., and sent by Brown from Thornton, Limestone county, while those to Brown were received by him at Thornton and sent by Gray & Wilmerding from Houston, as follows:

"T. M. Wilson, President.
"A. B. Ellis, Vice President.
"M. L. Gidden, Cashier.
"W. T. Brown, Asst. Cash.
"The Guaranty State Bank.
"Capital $40,000.00.
"Thornton, Texas, February 2, 1923.
"Gray & Wilmerding, Houston, Texas—Gentlemen: I own and hold in my possession seven hundred shares of Wilcox Oil & Gas Company of which I wish to list with you to be sold. This stock is quoted at $9.00 per share on the New York Exchange.

"Please wire me your best offer on the above amount of named stock and instructions and if satisfactory I will wire accepted and remit at once.

"Please let me hear from you at once. I remain as ever,

"Yours truly, W. T. Brown, Asst. Cashier."

"Western Union Telegram.
"Feb. 3, 1923. Day Letter.
"W. T. Brown, Guaranty State Bank, Thornton, Texas. Wilcox Oil closed at nine and one eighth last night will sell it at market or you can set a price on your stock and when we are able to sell will charge you seven and half cents a share commission in either case.
"Gray & Wilmerding."

"Western Union Telegram.
"DB177 14 1923 Feb 3 P M 1 56
"Thornton Tex 3 1256P
"Gray & Wilmerding Houston Tex Will accept nine, for my stock wire me where and how to send stock W. T. Brown."

"February 3, 1923.
"Mr. W. T. Brown, Asst. Cashier, The Guaranty State Bank, Thornton, Texas—Dear Sir: In answer to your valued favor of the 2nd, and wire of even date, being to advise that upon execution of your order we will confirm to you by wire immediately, and you may ship stock to this office against payment.

"We are strictly brokers and buy and sell on the New York Stock Exchange. Enclosing card giving New York Stock Exchange Commission rates.

"Thanking you for the favor, we beg to remain,

"Very truly yours,
"CIM/H Gray & Wilmerding."

"Feb. 3, 1923.
"W. T. Brown, Guaranty State Bank, Thornton, Texas. Have entered order to sell Seven Hundred Wilcox Oil & Gas at nine or better on exchange. Letter follows regarding shipment in case of execution.
"Gray & Wilmerding."

"Western Union Telegram.
"Feb. 5, 1923. 1034 A
"W. T. Brown Guaranty State Bank Thornton, Texas. Sold seven hundred Wilcox Oil Nine and one eighth for your account
"Gray & Wilmerding."

"The Guaranty State Bank.
"Thornton, Texas, February 5, 1923.
"Gray & Wilmerding, Houston, Texas—Gentlemen: Just received your wire of the 5th. 1040 a. m. stating that you have sold my seven hundred shares of the Wilcox Oil & Gas of which I am remitting to you today.

"Hoping to have the chance to do more business with you and thanking you in the future, I remain,

"Yours truly, W. T. Brown."

"February 7, 1923.
"W. T. Brown, Asst. Cashier, The Guaranty State Bank, Thornton, Texas—Dear Sir: We acknowledge receipt of your valued favor of the 5th, enclosing 700 shares Wilcox Oil & Gas Stock, for which we are enclosing our check to your order for $6333.60 in payment,

as per statement mailed from our New York office.

"Very truly yours,    Gray & Wilmerding,
"CIM/H           Per ————."

"The Guaranty State Bank.

"Thornton, Texas, February 9, 1923.

"Gray & Wilmerding, Houston, Texas—Gentlemen: I have received my check for the seven hundred shares of Wilcox Oil & Gas Co., for the amount of $6333.60 which was satisfactory.

"Thanking you for the favor extended to me and hoping that we may have some future business together, I remain as ever,

"Yours truly,

"W. T. Brown, Asst. Cashier."

It developed that there were two oil companies of the same name—the Wilcox Oil & Gas Company—one, whose stock was the subject-matter of this suit, a Limestone county, Tex., company; the other a Tulsa, Okl., concern. Defendant, owning stock in the Texas company, took the matter of sale up with plaintiffs, which negotiations brought about the agreement between the parties as embodied in the quoted letters and telegrams.

To defendant's general plea of privilege, plaintiffs filed a controverting affidavit, alleging: First, among other things, that the contract was procured by defendant through fraud perpetrated in Harris county, in the following manner:

"The defendant in his letter of February 2, 1923, to the plaintiffs, wrote the plaintiffs at Houston, Harris county, Tex., offering to sell 700 shares of the Wilcox Oil & Gas Company, that was being quoted on the New York Exchange at $9, when in truth and in fact the defendant knew that the shares which he held and intended to transmit to the plaintiffs in case such sale was to be effected were not of said Wilcox Oil & Gas Company, but were shares of an entirely different Wilcox Oil & Gas Company, and the defendant knew when he sent said letter to the plaintiffs that he did not have 700 shares of said company that was being quoted on the New York Exchange, and did not intend to send to plaintiffs 700 shares of said company, but intended to send 700 shares of an entirely different company, the value of which shares was far below the value of the shares of the company that was being quoted on the New York Exchange, and which were referred to in defendant's said letter of February 2, 1923;"

and second, that the suit was based upon a contract in writing in which defendant obligated himself to perform his part of same in Harris county.

In addition to complaints at the failure to sustain his objections to evidence received on the hearing, appellant insists that the trial court's order overruling his plea could not rest upon a finding that he had committed a fraud upon appellee at all (much less one in Harris county), or that he had in writing bound himself to perform any obligation in Harris county, because there was no evidence to support either.

With much earnestness he argues that the statement made in his first letter to appellees offering them his stock, "This stock is quoted at $9 per share on the New York Exchange," even if untrue, did not constitute fraud, and further, to quote his own language, "To have constituted a fraud it was necessary for plaintiffs to have proven further that the misrepresentation was by defendant knowingly made."

[1] We are not inclined to disagree with the contention that these letters and telegrams, embracing as they do the entire contract, standing alone, neither demonstrate nor sufficiently evidence the existence of any fraud, but might merely indicate a mutual mistake between the parties to them as to the identity of the particular stock with which they were dealing, the seller having in mind what it in fact was, the Texas concern's stock, and the buyer thinking it to be that of the Oklahoma corporation; in that event no such fraud as is contemplated by our venue statute would exist.

The state of the record here, however, precludes this court from taking that view of the matter; the statement of facts shows that ex parte interrogations were regularly propounded to appellant in the cause, that he deliberately refused to answer, and that they were taken as confessed and received in evidence against him. Without detailing the inquiries here, it is enough to record that, under them, he thus admitted knowing on February 2, 1923, when he wrote the letter of that date to appellees at Houston, that there were two different issues of Wilcox Oil & Gas Company stock, one of the par value of $1 per share, the other of the par value of $5 per share; that the 700 shares of the stock he held were not quoted on the New York Stock Exchange at $9 per share and were not in fact worth over $1.25 per share; that his purpose in so writing was to lead appellees to believe the stock he was offering them was then quoted at $9 and was not the cheaper stock; and that he realized having misled them into believing the stock he delivered was worth $9 or $9.18 per share, when in fact it was not worth over $1.25 per share.

Neither of the litigants was a corporation, and the statute applying in such instances, Revised Statutes, art. 3685, seems to have been complied with.

These admissions supply all the essential elements of actionable fraud, even under appellant's own quoted view of what is necessary to constitute it, including the fact that appellees did and had a right to rely upon the representations, and therefore completely destroy the force of appellant's argument that they were in position to and should have known otherwise, both from information

available to them as stockbrokers and from recitations on the face of the stock certificates sent showing what they really were. The fact that appellees did not closely examine the certificates sent, but did rely upon appellant's written affirmative representation that the stock he was sending was so quoted on the New York Exchange, was otherwise testified to, however. In such circumstances it is no answer to say to appellees that they might have known the truth by further inquiries. U. S. G. Co. v. Shields (Tex. Civ. App.) 106 S. W. 725; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900.

[2] Nor can it be doubted, we think, that the fraud thus appearing was committed in Harris county, where the letter embodying it was received and acted upon. Bank v. Bank (Tex. Civ. App.) 77 S. W. 239.

[3] Upon the second ground for the venue as laid, we are inclined to hold with appellant that the instruments did not evidence a contract in writing to perform an obligation in Harris county; there is nothing in the writings that expressly so bound him, nor do they reflect any undertaking upon his part that necessarily had to be performed there.

[4] None of appellant's assignments upon the overruling of his objections to, or of his motion to exclude, testimony can be sustained. These all related to the testimony of the witness McLean, and the statements thereunder do not show that any bill of exceptions was taken to the court's action in permitting him to answer over the objections. Morgan v. Barker (Tex. Civ. App.) 99 S. W. 731; Saenz v. Mumme & Co. (Tex. Civ. App.) 85 S. W. 59.

[5] Moreover, we do not think his testimony—the substance of which was that the stock he received from appellant was not being quoted on the New York Exchange at $9 per share at the time of the correspondence, but that there was a Wilcox Oil & Gas Company stock then being so quoted—was subject to the hearsay objection urged against it; in that connection he testified that he was in the stock brokerage business, managing appellees' Houston office, and that he gathered his information concerning this stock from various publications, particularly from the list published by the Standard Statistics Company.

[6] In these circumstances, we think the testimony was admissible; but, if it be conceded that it was not, the error was harmless, in view of appellant's admission to the same general effect through his deposition by confession.

From these conclusions it follows that the trial court's judgment should be affirmed; that order has accordingly been entered.

Affirmed.